IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Western Division - Cincinnati

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> MIAMI UNIVERSITY, <br><br> Defendant. <br><br> ALEEHA DUDLEY, <br><br> Plaintiff, <br><br> v. <br><br> MIAMI UNIVERSITY and DR. DAVID C. HODGE, in his official capacity as President of Miami University, <br><br> Defendants. | Case Number: 1:14-cv-038 <br><br> Judge Susan J. Dlott <br><br> Magistrate Judge Stephanie K. Bowman |

**PLAINTIFF-INTERVENOR UNITED STATES'
[PROPOSED] COMPLAINT IN INTERVENTION**

Plaintiff-Intervenor United States of America alleges the following:

**INTRODUCTION**

1. The United States files this action against Miami University to enforce Title II of the Americans with Disabilities Act of 1990, as amended ("Title II" and "ADA"), 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R Part 35.

2. Miami University uses technologies in its curricular and co-curricular programs, services, and activities that are inaccessible to qualified individuals with disabilities, including

1

current and former students who have vision, hearing, or learning disabilities.  Miami University has failed to make these technologies accessible to such individuals and has otherwise failed to ensure that individuals with disabilities can interact with Miami University's websites and access course assignments, textbooks, and other curricular and co-curricular materials on an equal basis with non-disabled students.  These failures have deprived current and former students and others with disabilities a full and equal opportunity to participate in and benefit from all of Miami University's educational opportunities.

3. Many individuals with disabilities, including those who have vision, hearing, or learning disabilities, require assistive technologies to use computers and interact with electronic documents and content on media such as websites.  Examples of assistive technologies include screen reader software, refreshable Braille displays, audio description, captioning, and keyboard navigation.

4. Screen readers are software programs that audibly read aloud information that is otherwise presented visually, and are often used by individuals with vision and learning disabilities.  Some screen readers highlight words while they are being read out loud, a feature that is often necessary for individuals with certain vision and learning disabilities to obtain information in electronic formats.  Refreshable Braille displays are devices that convert digital information to Braille, and are often used by individuals with vision disabilities.  Audio description narrates text and other visual information (such as, during an online video, the appearance of multiple individuals on screen or movement of a camera's focus between rooms in a building), and is often used by individuals with vision disabilities.  Captioning displays the text of spoken audio, and is often necessary for individuals with hearing disabilities to obtain information that is communicated aurally in multimedia.  Keyboard navigation, often used by

individuals with certain vision and physical disabilities, allows computer users to access content using keyboard input instead of a mouse.

5. Miami University uses various web-based and digital programs to communicate information for its courses and co-curricular activities, to publish information about the university, and to complete administrative processes in its undergraduate and graduate degree programs. Because Miami University has formatted and presented information in ways that are technologically incompatible with various assistive technologies, much of this information cannot be accessed by individuals who use these assistive technologies.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12133.

7. This Court has the authority to grant the relief sought under 42 U.S.C. § 12133, and 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to this cause of action took place within this district, and it is proper in this Division because Miami University's principal place of business is located in it. *See* S.D. Ohio Civ. R. 82.1.

## PARTIES

9. Plaintiff-Intervenor is the United States of America.

10. Defendant Miami University is an instrumentality of the State of Ohio. Miami University is established and governed by the laws of, and funded by, the State of Ohio. It is a public entity pursuant to 42 U.S.C. § 12131(1)(B) and 28 C.F.R. § 35.104. Miami University's main campus is located in the City of Oxford in Butler County, Ohio.

11. Aleeha Dudley is the Plaintiff and is a former student at Miami University.

## FACTS

**A.  Miami University Uses Inaccessible Technologies**

12. Miami University uses in its educational and co-curricular services, programs, and activities many web-based and digital technologies, including those listed below, which are incompatible with a variety of the assistive technologies used by individuals with disabilities.

13. Miami University's websites, e.g., www.miamioh.edu, have barriers that make the websites difficult to use with screen reader software; these barriers include, for example, a revolving carousel of news stories on the home page and numerous untagged PDF documents.

14. Miami University creates and publishes videos about the university on www.youtube.com, and uses other web-streaming services, such as www.vimeo.com, to present course-related videos to students. Many of these videos either lack captions or contain numerous inaccurate captions, thus failing to communicate effectively with individuals who are deaf or hard of hearing.

15. Google Docs is a web-based word processing software. Miami University directed students in certain of its courses to collaborate on documents by using Google Docs. At those times and until July 2014, important functionality of Google Docs could not be used with screen reader software because Google Docs utilized color coding and presented information in image-based formats, preventing individuals with vision disabilities from fully participating in course assignments.

16. Learning management systems ("LMS") are web-based platforms used by Miami University and other educational institutions for various purposes, such as for the distribution of

course-related information to students, the submission by students of completed course assignments, and communication and collaboration between students and instructors.

17. Miami University has used the TurnItIn, www.turnitin.org, LMS in various courses for collecting course work, but, as implemented by Miami University, TurnItIn has unlabeled graphs and highlights that cannot be identified with a screen reader, limited keyboard functionality, controls that regularly are not available to assistive technology, incorrectly labeled website elements, and data tables without row and column headers.  These barriers make it difficult or impossible for an individual who is blind to navigate and understand the web content.

18. Miami University has used the LearnSmart, learnsmart.com, LMS in various courses for managing course work, but, as implemented by Miami University, LearnSmart uses extensive Flash-based applications, videos, ebooks, assessment tools, and other multimedia that do not support screen reader usage.

19. Miami University has used the WebAssign, www.webassign.net, LMS for managing course work, but WebAssign relies on ASCII for notation of math equations.  ASCII is improperly read by a screen reader because the characters are not read as mathematical characters.  WebAssign also has key images that are missing descriptive labels, functions that require mouse drag-and-drop, and unlabeled graphs.  These barriers make it difficult or impossible for an individual who is blind to navigate and understand the web content.

20. Miami University has used the MyStatLab, www.pearsonmylabandmastering.com/northamerica/mystatlab, LMS for managing course work. MyStatLab, as implemented by Miami University, includes uncaptioned videos, tables that are not labeled for navigation or understanding, symbols that are not accurately relayed to assistive technology, and various Flash-based components that are not usable by assistive technologies.

21. Miami University has used the Vista Higher Learning, vistahigherlearning.com/students/supersite, LMS for students enrolled in Spanish courses, but, as implemented by Miami University, Vista Higher Learning relies on mouse drag-and-drop activities that do not work with the assistive technologies used by individuals with vision and other disabilities.

22. Miami University also has used the Sapling, www2.saplinglearning.com, LMS for managing course work, but, as implemented by Miami University, it is Flash-based without accessibility features, and is thus unusable by individuals with disabilities who use screen reader software.

**B.    Miami University Has Failed to Make its Programs, Services, and Activities Equally Accessible to Individuals with Disabilities Who Use Assistive Technologies.**

23. Miami University has a process by which students with disabilities can register with the university to receive disability accommodations.  As part of that process, Miami University requires that students submit information concerning their disabilities.

24. Miami University then issues disability accommodation letters to students who have registered to receive accommodations.  In some circumstances, Miami University provides copies of the accommodation letters to faculty and staff.  These letters set forth the accommodations the university has authorized for each student, and can be used by students to demonstrate to faculty and staff their university-sanctioned accommodations.

25. Miami University has issued disability accommodation letters to students with vision, hearing, or learning disabilities.

26. Some Miami University students who have vision or learning disabilities rely on assistive technologies (*e.g.*, screen readers, keyboard navigation, and refreshable Braille displays) to read physical books and documents that have been converted into digital formats.

27. When Miami University has converted physical books and documents into digital formats for students who require such conversion because of their disabilities, it has repeatedly failed to do so in a timely manner. And Miami University has repeatedly provided these students with digitally-converted materials that are inaccessible when used with assistive technologies. This has made the books and documents either completely unusable, or very difficult to use, for the students with these disabilities.

28. Miami University has a policy or practice by which it converts physical texts and documents into electronic formats only if students can prove they purchased (rather than borrowed) the physical texts or documents. Miami University will not convert into digital formats any physical texts or documents from its library collections and it will not seek to obtain from other libraries existing copies of digitally-converted materials. This has rendered many of the materials that Miami University provides throughout its library system and which it makes available to its students unavailable to students who require that materials be converted into digital formats because of a disability.

29. Miami University converts textbooks and documents through large-batch scanning and use of optical character recognition ("OCR"), which automatically identifies alphanumerical and other characters and overlays computer-generated text onto the digital image of the book pages.

30. While OCR significantly reduces resources necessary to convert materials, the automated process of OCR is imperfect and errors are regularly inserted into materials subject to OCR. OCR-generated text must be proofread and remediated through manual and automated processes. If OCR-generated text is not proofread and is not remediated where errors exist, there

will be significant errors when a student with a disability uses assistive technologies, such as screen readers and refreshable Braille displays, to access the converted materials.

31. Science, math, and language arts textbooks and documents that have been digitally converted using OCR, but which have not been proofread or remediated, are particularly problematic for students with disabilities who use assistive technologies. For example, such materials regularly rely on symbols and characters other than alphanumeric characters, which are regularly misrepresented by OCR technology and have page structures with sidebar discussions, images, and captions that are not captured by the OCR process alone. The result is that students with vision and learning disabilities are either completely impeded, or significantly frustrated, when seeking to obtain information in course materials.

32. Miami University has asked students enrolled in some of its courses to use "clickers," which are handheld devices used to register responses (such as to multiple-choice questions) or to monitor class attendance.

33. Current and former students with vision or learning disabilities have been unable to use "clickers" either because the devices require visual interaction or because Miami University has allotted insufficient time for students to register responses.

34. Miami University has regularly asked students enrolled in some of its courses to interact with inaccessible websites, such as the websites identified in Paragraphs 13-22 above.

35. Current and former students with vision disabilities have been unable to interact with these inaccessible websites. And though Miami University has been aware of the inaccessibility of some of these websites, it has failed to provide these students with timely and adequate assistance.

36. Miami University has used PowerPoint presentations to present information to students enrolled in some of its courses.

37. Some of these PowerPoint presentations contain images that Miami University has not made accessible (through, for example, the use of tactile graphics) to current and former students with vision disabilities.  And in the instances when Miami University has attempted to provide students with disabilities with accessible versions of these images, it has done so days or weeks after displaying the PowerPoint presentations during class lectures.

38. Miami University required a former student with a vision disability to view a web-based video about mitochondria that was completely visual.  The video did not contain any audio description and was not provided in an alternate format.  Not until days after it had directed other students to view the video did Miami University provide the student with a version of the video that contained audio descriptions.

39. Miami University repeatedly required a student who is deaf to complete assignments that required the student to view audio-visual materials that lacked captioning or had inaccurate captioning.  This impeded the student from completing assignments or required the student to resort to securing her own captioning services.

40. Miami University-sanctioned organizations, such as After Dark, which organizes Friday evening student events, and Miami University Activities and Programming ("MAP"), which organizes large scale campus events, such as Homecoming and Family Weekend, regularly circulated inaccessible files through the Google Apps for Education platform.  Students with vision disabilities could not review or understand the content in those inaccessible files.

**C. Miami University Has Failed to Use Other Appropriate Means to Ensure That Individuals with Disabilities Can Equally Participate in Miami University's Programs, Services, and Activities.**

41. Miami University has failed to provide current and former students with vision and hearing disabilities materials in non-technological formats, such as hard copy Braille and tactile graphics, or with services such as priority seating in classrooms.

42. Buildings throughout Miami University lack Braille room numbers, significantly impairing or making impossible navigation by individuals with vision disabilities.

**D. Miami University Has Harmed Current and Former Students with Disabilities.**

43. Notwithstanding repeated requests by current and former students with disabilities for appropriate auxiliary aids and services and complaints to Miami University instructors, assistants, administrators, and personnel about inaccessible technologies used in courses, Miami University (1) used LMSs, web content, and software that individuals with disabilities could not use with their assistive technologies; (2) provided scanned textbooks that were not accurately converted and not in Braille, when requested; and (3) distributed course documents, multimedia, and other materials that were unusable with assistive technologies and which Miami University had not accurately converted.

44. Current and former students with disabilities missed out on significant portions of courses because materials were inaccessible and untimely, and the students were regularly required to expend significant time seeking materials in alternate formats and learning new content in ineffective and cumbersome ways.

45. Students with disabilities have withdrawn from courses and majors, or have withdrawn from Miami University altogether, because Miami University provided inaccessible materials and used inaccessible technologies.

10

46. Individuals with disabilities have been stressed, frustrated, and harmed because of Miami University's failure to ensure their equal participation in Miami University's curricular and co-curricular programs, services, and activities.  Miami University's failure to provide appropriate auxiliary aids and services has delayed or impaired the progress of current and former students with disabilities in obtaining undergraduate and graduate degrees.

## VIOLATION OF TITLE II OF THE ADA
### (42 U.S.C. §§ 12131-12134; 28 C.F.R Part 35)

47. The allegations contained in the preceding paragraphs are incorporated by reference.

48. Miami University has, by reason of the disabilities of qualified individuals, excluded such individuals from participation in, and denied them the benefits of, Miami University's services, programs, and activities, and further subjected such individuals to discrimination in violation of 42 U.S.C. § 12132 and the Title II implementing regulation, 28 C.F.R. pt. 35, by:

   a. Denying qualified individuals with disabilities the opportunity to participate in or benefit from aids, benefits, or services, *see* 28 C.F.R. § 35.130(b)(1)(i);

   b. Affording qualified individuals with disabilities an unequal opportunity to benefit from the aids, benefits, and services that are provided to others, *see* 28 C.F.R. § 35.130(b)(1)(ii);

   c. Providing qualified individuals with disabilities with aids, benefits, and services that do not afford them an equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided to others, *see* 28 C.F.R. § 35.130(b)(1)(iii);

d. Providing different aids, benefits, or services to qualified individuals with disabilities than are provided to others when such actions are not necessary to provide individuals with disabilities with aids, benefits, or services that are as effective as those provided to others, *see* 28 C.F.R. § 35.130(b)(1)(iv);

e. Utilizing criteria or methods of administration, including insufficient and inconsistent policies, practices, and procedures, that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, *see* 28 C.F.R. § 35.130(b)(3);

f. Failing to take appropriate steps to ensure that Miami University's communications with qualified applicants, participants, and members of the public with disabilities are as effective as communications with others, including through the provision of appropriate auxiliary aids and services, *see* 28 C.F.R. § 35.160(a)(1), (b)(1);

g. Failing to give primary consideration to the requests of individuals with disabilities when determining the types of auxiliary aids and services necessary to ensure effective communication, *see* 28 C.F.R. § 35.160(b)(2);

h. Failing to provide individuals with disabilities with auxiliary aids and services in accessible formats, in a timely manner, and in such a way as to protect the independence of such individuals, *see* 28 C.F.R. § 35.160(b)(2);

i. Failing to make reasonable modifications in Miami University's policies, practices, or procedures to avoid discrimination on the basis of disability, *see* 28 C.F.R. § 35.130(b)(7); and

j.  Excluding individuals with disabilities from participation in and denying them the benefits of Miami University's services, programs, and activities, and otherwise subjecting them to discrimination, because Miami University's facilities are inaccessible to or unusable by individuals with disabilities, *see* 28 C.F.R. §§ 35.149-35.151.

49.  Miami University acted intentionally and with deliberate indifference and knew or should have known of the inaccessibility of its technologies and the barriers experienced by qualified individuals with disabilities, including through emails, complaints, and contacts with administrators, instructors, personnel, and assistants.  Miami University knew, or should have known, that students with various disabilities would require accessible technologies and materials because it registered such students to receive accommodations.

50.  As a result of Miami University's discrimination, qualified individuals with disabilities have suffered compensatory damages and injuries, including humiliation, frustration, and distress.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court:

(1)  Grant judgment in favor of the United States and declare that Miami University violated Title II of the ADA, 42 U.S.C. §§ 12131-12134 and its implementing regulation at 28 C.F.R. Part 35.

(2)  Enjoin Miami University, its officers, agents, employees, and all other persons and entities in active concert and participation with it from denying individuals with disabilities equal participation in and equal opportunity to benefit from its

        services, programs, and activities, or otherwise subjecting individuals with disabilities to discrimination.

(3)     Enjoin Miami University from providing any aids, benefits, or services, directly or through contractual, licensing, or other arrangements, that:

    (a)     Deny qualified individuals with disabilities the opportunity to participate in or benefit from the aids, benefits, or services;

    (b)     Afford qualified individuals with disabilities opportunities to participate in or benefit from aids, benefits, or services that are not equal to that afforded others;

    (c)     Provide qualified individuals with disabilities with aids, benefits, or services that are not as effective in affording equal opportunity to obtain the same results, to gain the same benefits, or to reach the same levels of achievement as those provided to others;

    (d)     Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of such individuals with disabilities than is provided to others, unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;

    (e)     Otherwise limit qualified individuals with disabilities in the enjoyment of any rights, privileges, advantages, or opportunities enjoyed by others receiving the aids, benefits, or services.

(4)     Order Miami University to take appropriate steps to ensure that communications with individuals with disabilities are as effective as communication with others.

(5) Order Miami University to furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities equal opportunities to participate in, and enjoy the benefits of, Miami University's services programs, and activities.

(6) Order Miami University to modify policies, practices, and procedures to avoid discrimination on the basis of disability.

(7) Order Miami University to take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable person aggrieved and harmed by Miami University's discriminatory conduct to the position that he or she would have been in but for Miami University's conduct;

(8) Award compensatory damages in an appropriate amount to persons aggrieved and harmed by Miami University's discrimination.

(9) Order such other appropriate relief as the interests of justice may require.

Dated: _____, 2015

                              Respectfully submitted,

                              LORETTA E. LYNCH
Attorney General

_____

| | |
|---|---|
| CARTER M. STEWART | VANITA GUPTA |
| United States Attorney | Principal Deputy Assistant Attorney General |
| Southern District of Ohio | EVE L. HILL |
| MATTHEW J. HORWITZ | Deputy Assistant Attorney General |
| Assistant United States Attorney | Civil Rights Division |
| 221 E. Fourth Street, Suite 400 | |
| Cincinnati, Ohio 45202 | |
| (513) 684-6823 (Horwitz) | _____ |
| (513) 684-6972 (Fax) | REBECCA B. BOND |
| Matthew.Horwitz@usdoj.gov | Chief |
| | KATHLEEN P. WOLFE |
| | Special Litigation Counsel |
| | KEVIN J. KIJEWSKI |
| | Deputy Chief |
| | Disability Rights Section |

                              _____
WILLIAM F. LYNCH
Trial Attorney
PEARLINE M. HONG
Trial Attorney
Disability Rights Section (NYA)
U.S. Department of Justice
950 Pennsylvania Ave., N.W. – NYA
Washington, DC 20530
(202) 305-2008 (Lynch)
(202) 616-2927 (Hong)
(202) 305-4486 (Fax)
William.Lynch@usdoj.gov
Pearline.Hong@usdoj.gov

*Counsel for Plaintiff-Intervenor*
*United States of America*