# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### Western Division -- Cincinnati

| | |
|---|---|
| ALEEHA DUDLEY, | ) |
| Plaintiff, | ) |
| And | ) |
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Intervenor, | ) |
| v. | ) Case No.: 1:14-cv-38 |
| MIAMI UNIVERSITY et al., | ) Judge Susan J. Dlott |
| Defendants. | ) |

**CONSENT DECREE**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.    DEFINITIONS........................................................................................................ 2

III.    AGREED RESOLUTION .................................................................................... 4

IV.    TERMS OF AGREEMENT .................................................................................. 5

     A.    General Non-Discrimination Obligations ..................................................... 5

     B.    Web Content Accessibility ............................................................................ 6

     C.    Learning Management System and Instructional Support Application Accessibility 10

     D.    Textbook and Course Material Accessibility................................................. 11

     E.    Student Organization Website Accessibility ................................................. 17

     F.    Inaccessible Digital File Conversion Submission Page ............................... 18

     G.    Accessible Technology Policy ...................................................................... 20

     H.    Accessible Technology Coordinator.............................................................. 21

     I.    University Accessibility Committee ............................................................. 23

     J.    Accessible Technology Training ................................................................... 25

     K.    Accessible Educational Resources Portal ..................................................... 28

     L.    Technology Procurement .............................................................................. 29

     M.    Web Accessibility Testing ............................................................................ 32

     N.    Accessible Technology Specialist, Audit, Evaluation, and Corrective Action Plan... 33

     O.    Grievance Process......................................................................................... 35

     P.    Evaluation of Student Disability Services ................................................... 36

     Q.    Undue Burden and Fundamental Alteration Determinations......................... 36

     R.    Personal Devices and Services...................................................................... 37

V.   SPECIFIC RELIEF..................................................................................... 37

VI.  REPORTING, ENFORCEMENT, AND OTHER PROVISIONS....................................... 37

EXHIBIT A.................................................................................................... 45

EXHIBIT B.................................................................................................... 56

## I.   INTRODUCTION

1.     Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42

U.S.C. §§12131-12134, and its implementing regulation ("Title II regulation"), 28 C.F.R. pt. 35,

prohibit public entities, including Miami University ("Miami"), from discriminating on the basis

of disability, and from excluding qualified individuals with disabilities from participating in, and

denying such individuals the benefits of, their services, programs, and activities.

2.     On January 10, 2014, Aleeha Dudley, who is blind, brought this action against

Miami and its former President, Dr. David C. Hodge, alleging, *inter alia*, that Miami and Dr.

Hodge excluded her from participation in and the benefit of Miami's services, programs, and

activities, discriminated against her on the basis of disability, and failed to take appropriate steps

to ensure equally effective communication with her in violation of Title II of the ADA, Section

504 of the Rehabilitation Act, 29 U.S.C. § 794, and both statutes' implementing regulations.

(Dkt. No. 1.)  Former President Hodge is dismissed from this suit.

3.     On April 22, 2014, Dudley and the National Federation of the Blind ("NFB") filed

a motion for leave to file an Amended and Supplemental Complaint.  (Dkt. No. 21.)

4.     On May 12, 2015, the United States moved to intervene in this action.  (Dkt. No.

26.)   On September 10, 2015, the Court granted the United States' motion to intervene.  (Dkt.

No. 46.)

5.     The United States' Complaint alleges, *inter alia*, that Miami: (1) uses technologies

that are inaccessible to qualified individuals with disabilities; and (2) has failed to ensure that

qualified individuals with disabilities can access Miami's curricular and co-curricular materials

on an equal basis with individuals who do not have disabilities.  (Dkt. No. 47.)

6.     Miami denies the foregoing allegations and denies that it violated the ADA, Section 504, or any other law as otherwise asserted by the United States or Dudley. Miami avers that it has been and remains committed to providing equal opportunity for the education of qualified individuals with disabilities, and that it has already undertaken many of the requirements of this Consent Decree (hereinafter "Consent Decree" or "Decree").

7.     This Consent Decree resolves all claims alleged in the United States' and Dudley's complaints; it requires Miami to provide qualified individuals with disabilities with an equal opportunity to participate in and benefit from Miami's services, programs, and activities, as Miami increasingly relies on web-based, digital, and emerging technologies. This Consent Decree does not constitute and shall not be deemed to be a finding or determination by the Court, nor an admission by any party, regarding the merits, validity or accuracy of any of the allegations, claims or defenses asserted by the United States, Miami, or Dudley. This Decree represents the compromise of disputed claims in lieu of litigation.

## II. DEFINITIONS

8.     Terms in this Decree have the same meaning as defined in the Title II regulation at 28 C.F.R. § 35.104.

9.     "Equally effective alternate access," with respect to electronic and information technology, means an alternative format, medium, or other aid that timely and accurately communicates the same content as does the original format or medium, and which is appropriate to an individual's disability. To provide equally effective alternate access, Miami need not ensure that qualified individuals with disabilities achieve the identical result or level of achievement as individuals without disabilities, but Miami must provide appropriate auxiliary aids and services as necessary to afford individuals with disabilities an equal opportunity to obtain the same result,

2

gain the same benefit, or reach the same level of achievement, in the most integrated setting appropriate to their needs. In providing equally effective alternate access, Miami may rely on any commonly accepted standard or combination of standards, including standards not specifically identified in this Consent Decree, provided the remainder of this definition is met. Miami is not required to take any action that results in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burden, but must nevertheless ensure, to the maximum extent possible, that qualified students with disabilities receive the benefits or services provided by Miami.

10. "Fundamental alteration" means a change to Miami's service, program, or activity that fundamentally alters the nature of the service, program, or activity, which includes academic courses or technology. Where a fundamental alteration can be documented as set forth in this Consent Decree, Miami will take any other action that would not result in such an alteration but would nevertheless ensure that, to the maximum extent possible, qualified individuals with disabilities receive the benefits or services provided by Miami.

11. "Instructional support application" means a software application, whether used in a single course, by a department, by a college or by a school, or across Miami (*i.e.*, University-wide), which Miami makes available to students, and which is designed and dedicated to the purpose of collecting or delivering course content or assignments, or assessing student performance. An instructional support application is peripheral to a learning management system and is not necessarily used alongside a learning management system. Instructional support applications are either "non-standalone," because they contain supplementary digital content provided (either directly or through third parties) by the publishers of texts and book-length course materials, or "standalone," because they do not contain such content. Examples of

3

instructional support applications include: Turnitin, LearnSmart, MyStatLab, Vista Higher Learning, Sapling, and WebAssign.

12.     A "learning management system" ("LMS") means a software application, whether used in a single course, by a department, by a college or by a school, or across Miami (*i.e.*, University-wide), which Miami makes available to students and uses to plan, create, administer, document, track, report, deliver, and maintain electronic educational courses and course content and assess student performance—including by enabling collaboration and communication among members of the class and between the class and instructor; by supporting the assessment of learning outcomes; and by supporting formative and summative feedback to students.

13.     "Timely" and "timeliness" mean access in sufficient time for the person with the disability to have an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as persons without disabilities.

14.     "Undue financial and administrative burdens," or "undue burdens," are created when a proposed course of action would result in significant difficulty or expense. Where Miami can demonstrate undue burdens as set forth in this Consent Decree, Miami will take any other action that would not result in such an undue burden but would nevertheless afford, to the maximum extent possible, qualified individuals with disabilities the benefits or services provided by Miami.

### III.     AGREED RESOLUTION

15.     The United States and Miami, and Dudley only as to those provisions of this Decree that apply to former students and to Paragraph 69, *infra*, agree that it is in their interest, and the United States believes that it is in the public interest, to resolve this lawsuit without further litigation. Accordingly, the United States, Dudley, and Miami agree to the entry of this

Consent Decree. Only the United States shall have the power to seek enforcement of this Decree. In exchange for Miami's agreement to enter into this Consent Decree, the United States agrees to terminate its investigation of DJ No. 204-58-229 and agrees that, except as provided in Paragraph 67, *infra*, it will not institute any other civil action alleging discrimination based on the allegations contained in the complaints filed by the United States and Dudley in the case styled *Dudley et al. v. Miami University, et al.*, Case No. 1:14-cv-38, or based on any other allegation, made by any other person or entity, related to or arising out of the allegations contained in the United States' Complaint and occurring on or before the date of this Consent Decree.

16.     In resolution of this action, the Parties hereby **AGREE** and the Court expressly **APPROVES, ENTERS, AND ORDERS** the following:

## IV.     TERMS OF AGREEMENT

### A.     General Non-Discrimination Obligations

17.     Miami will comply with the requirements of Title II, the Title II regulation, and the requirements of this Decree. *See* 42 U.S.C. §§ 12131-12134; 28 C.F.R. pt. 35.

18.     Miami must take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others. In doing so, Miami is not required to take any action that it can demonstrate (pursuant to the procedures set forth in Paragraph 63, *infra*) would result in undue financial and administrative burdens or in a fundamental alteration in the nature of a service, program, or activity.

19.     Miami must make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless Miami can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

5

20.     This Decree addresses Miami's obligations to qualified individuals with disabilities who, during the term of this Decree, are: (a) Miami students, including students enrolled in Miami, students who have been accepted into Miami, and former students of Miami where applicable; and (b) applicants for admission to Miami, including individuals who have applied for admission to Miami and, where specifically indicated in this Decree, prospective applicants (*i.e.*, individuals who seek to apply for admission to Miami).

**B.      Web Content Accessibility**

21.     Within six (6) months of the entry of this Consent Decree Miami will:

a.  Subject to Paragraph 22, *infra*, provide in conformance with the World Wide Web Consortium's ("W3C") Web Content Accessibility Guidelines ("WCAG") 2.0 AA all new (*i.e.*, non-existent until on or after entry of this Consent Decree) and redeveloped (*i.e.*, existing before entry of this Consent Decree but substantially changed in terms of functionality or structure) web pages, web applications, and web content, created by Miami, on websites and subdomains used for Miami's academic divisions, academic departments, and administrative offices (listed at Exhibit A).

b.  For websites and subdomains used for Miami's academic divisions, academic departments, and administrative offices (*see* Exhibit A), provide the United States with Miami's plan to make pre-existing (*i.e.*, existing before the entry of this Consent Decree) web pages, web applications, and web content, created by Miami, and published by Miami on or after January 2012 but not subject to Subsection (a) above, comply with WCAG 2.0 AA.  Within eighteen (18) months of the entry of this Decree, Miami shall make all such web pages, web

6

applications, and web content comply with WCAG 2.0 AA, subject to the requirements of Paragraph 22, *infra*.

c. If specifically requested by a qualified student with a disability, modify legacy pages (*i.e.*, pages published prior to January 2012) and archive content (*i.e.*, content no longer in use but subject to records retention schedules) to conform to WCAG 2.0 AA, provided that Miami may provide equally effective alternate access of legacy and archive content until conformance is accomplished.

d. With respect to third-party content, websites, or applications that Miami uses for completion of critical or important transactions (*e.g.*, websites used for campus housing, campus dining, registering for classes, paying bills, obtaining transcripts) or to complete required training (*e.g.*, AlcoholEDU), either:

    1) Cause such third-party content, websites, or applications to conform with WCAG 2.0 AA and this Decree; or

    2) Provide equally effective alternate access to qualified individuals with disabilities until such time that conformance can be achieved pursuant to Miami's Accessibility Audit Corrective Action Plan (*see infra* Section N, "Accessible Technology Specialist, Audit, Evaluation, and Corrective Action Plan").

e. For the benefit of prospective applicants to Miami, make any web content relating to applications for admission or financial aid (*e.g.*, application instructions, the applications themselves) that Miami posts to its web pages or web applications conform to WCAG 2.0 AA. To the extent Miami uses third-party websites or web applications for such web content, Miami will either: (1) cause such third-party

7

content, websites, or applications to conform with WCAG 2.0 AA and this Decree; or (2) provide equally effective alternate access to qualified individuals with disabilities until such time that conformance can be achieved pursuant to Miami's Accessibility Audit Corrective Action Plan (*see infra* Section N, "Accessible Technology Specialist, Audit, Evaluation, and Corrective Action Plan").

    f.  On the Accessible Educational Resources Portal described in Section K, *infra*, provide a method by which visitors to Miami's websites can submit feedback (*e.g.*, an accessible form, e-mail address, phone number) on how accessibility can be improved. The feedback will be regularly monitored by Miami.

22.    The following requirements apply to those Miami websites and subdomains, and web applications, subject to Paragraph 21(a) or (b), *supra*:

    a.  <u>Videos</u>. All videos embedded within the home page of each academic division and Vice-Presidential office, and all videos relating to the completion of critical or important transactions (*e.g.*, registering for classes, paying bills, obtaining transcripts) must comply with WCAG 2.0 AA. All other videos shall be remediated in accordance with Section F, "Inaccessible Digital File Conversion Submission Page," *infra*.

    b.  <u>Electronic Documents</u>. Individual Miami offices, divisions, and departments may submit requests to Miami's Accessible Technology Coordinator (*see infra* Section H) to seek exceptions to the requirement that electronic documents posted to their websites and subdomains, or within their web applications, conform with WCAG 2.0 AA. Miami shall grant exceptions only for electronic documents meeting all

8

of the following requirements: (1) the documents are of interest to a specific and limited audience (*e.g.*, researchers in a particular academic discipline); (2) the set of documents requiring remediation to conform with WCAG 2.0 AA is voluminous (*i.e.*, the total page count of the electronic documents that reside on a single web page exceeds 100 pages), or is—from a technical perspective—exceptionally difficult to remediate; and (3) the documents are presented in such a way that individuals with disabilities are able to identify documents of particular interest and request remediation of those documents in accordance with Section F, "Inaccessible Digital File Conversion Submission Page," *infra*. The Accessible Technology Coordinator will include in his or her quarterly reports (*see* Paragraph 39(d), *infra*) a detailed description (*e.g.*, a description of the nature of the excepted documents and the precise number of documents at issue), together with supporting documentation (*e.g.*, screen captures from relevant web pages), of the reasons why Miami granted each requested exception during the relevant reporting period.

23.     To the extent web content or web applications exist that are not covered under Paragraph 21(a) and (b), *supra*, an individual may request access to such web content or web applications in accordance with Section F, "Inaccessible Digital File Conversion Submission Page," *infra*.

24.     Within two (2) months of the entry of this Decree, Miami will designate a Web Accessibility Coordinator (in Information Technology Services ("IT Services") for Miami's web content) who will report to the Vice President for Information Technology. The Web Accessibility Coordinator will be knowledgeable concerning:

9

1) Accessibility and usability of web content;

2) Accessible document development and remediation;

3) Accessibility and usability of digital equipment, including assistive technologies;

4) Testing and evaluation of the accessibility of web and other technologies;

5) This Decree;

6) Standards published by the W3C, such as WCAG 2.0; and

7) Publishing standards for accessible electronic books and documents, such as the DAISY Consortium's Digital Accessible Information System ("DAISY") Standard and the International Digital Publishing Forum's ("IDPF") EPUB3 specification.

**C.**    **Learning Management System and Instructional Support Application Accessibility**

25.    Prior to the conclusion of the 2016-2017 academic year, Miami will make its University-wide LMSs, which Miami presently expects to migrate to the Canvas LMS, conform with WCAG 2.0 AA. Beginning three (3) months from the entry of this Decree, and until such time as Miami's University-wide LMS(s) conform with WCAG 2.0 AA, Miami will, upon request by a student with a disability: (a) modify specific pages on its existing University-wide LMS, Niikha, to conform with WCAG 2.0 AA; or (b) provide the requesting student with equally effective alternate access to the information contained in the Niikha pages at issue. Course materials provided on Miami's University-wide LMSs are subject to Section D, "Textbook and Course Material Accessibility," *infra*.

10

26.     All other LMSs and all instructional support applications in use by Miami during the term of this Decree will be subject to the Accessible Technology Audit and Evaluation procedures described in Section N, "Accessible Technology Specialist, Audit, Evaluation, and Corrective Action Plan," *infra*.

27.     For the term of this Decree, in purchasing or acquiring any new LMS, or any standalone instructional support application, Miami will:

a.   Evaluate any available product accessibility information, such as a Voluntary Product Accessibility Template ("VPAT"), third-party product accessibility evaluations, publicly-available accessibility evaluations, and automated testing reports. Miami's IT Services staff will obtain log-in credentials from the vendor to independently test the LMS or instructional support application through automated, expert, and user testing—using in-house staff or third-party consultants—and will assess the claims of the VPAT and any available accessibility evaluation to determine the product's conformance with WCAG 2.0 AA and its ability to be used by students with disabilities; and

b.   Meet the requirements set forth in Section L, "Technology Procurement," *infra*.

**D.     Textbook and Course Material Accessibility**

28.     Miami will provide students with disabilities equally effective communication of curricular materials (*e.g.*, textbooks, workbooks, articles, compilations, presentations, collaborative assignments, videos, and images or graphical materials) converted to alternate formats, provided that such student registers with Student Disability Services, requests accommodations, and participates in dialogue with Student Disability Services in identifying what will be equally effective communication.

11

a. In selecting texts and book-length course materials, including any supplementary digital applications or content provided by the publishers of such texts and book-length course materials, Miami will consider the availability of materials in accessible electronic formats, such as EPUB3, DAISY, WCAG 2.0 AA, the W3C's Web Accessibility Initiative Accessible Rich Internet Applications Suite ("WAI-ARIA") 1.0, the W3C's Authoring Tool Accessibility Guidelines ("ATAG") 2.0, the W3C's Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAG2ICT"), the W3C's Mathematical Markup Language ("MathML") 3.0, the Braille Authority of North America's ("BANA") Guidelines and Standards for Tactile Graphics (2010), the BANA Guidelines for the Production of Braille Materials through the Use of Braille Production Software (2007), and any successors to these standards that become effective during the term of this Decree. Any supplementary digital applications or content, such as non-standalone instructional support applications, provided by the publishers of texts and book-length course materials, shall not be subject to Section C, "Learning Management System and Instructional Support Application Accessibility," *supra*, or Section L, "Technology Procurement," *infra*.

b. If any student registers with Miami's Student Disability Services and identifies as having a vision or hearing disability for which modifications, auxiliary aids or services, or assistive technologies are appropriate and necessary to access his or her curricular programming, Miami will consult with that student before the beginning of each semester to determine whether the student will require

12

curricular materials in alternate formats, what assistive technologies the student
uses or needs, and what formats will work with the student's assistive
technologies.

c. If any student who is not subject to Subsection (b) above has registered with
Miami's Student Disability Services and identifies as having a disability for which
assistive technologies or the provision of curricular materials in alternate formats
is necessary, Miami will consult with the student before the beginning of each
semester to determine what alternate formats the student will require for his or her
curricular materials, what assistive technologies the student uses or needs, and
what formats will work with the student's assistive technologies. When the
student registers with Miami's Student Disability Services, Student Disability
Services will notify the student that he or she may request the consultations set
forth in Paragraph 28(d), *infra*.

d. Together with each instructor in each course in which the student is registered,
Miami's Student Disability Services will, no later than two (2) weeks before the
beginning of each course, consult with each student identified pursuant to
Paragraph 28(b), *supra*, and each student who, pursuant to Paragraph 28(c), *supra*,
requests the consultations set forth herein, to:

  1) Review and discuss the course syllabus and other available
     information concerning the formats in which course content will be
     presented;

  2) Identify all materials, including multimedia, that will be provided
     to or used by students, as well as which materials will need to be

13

        converted each week of the semester, to the extent the information

        is set forth in the course syllabus or is otherwise available;

3) To the extent the information is set forth in the course syllabus or is

    otherwise available, identify if any equipment will be used in the

    classroom (*e.g.*, laboratory equipment) that may present an

    accessibility barrier to a student, and: (a) identify the accessible

    equipment that the student will need and how Miami will provide

    it; or (b) if appropriate, how Miami will provide the student with

    equally effective alternate access;

4) Determine in what format the student prefers textual and graphical

    material for effective communication, including electronic format,

    hard copy Braille, described images, tactile images, etc.;

5) Confirm from the student that the format will be usable by the

    student's assistive technology, if applicable, or if appropriate, how

    equally effective alternate access will be provided; and

6) Develop and memorialize in writing, an individualized plan—a

    copy of which will be provided to the student and instructor (*e.g.*,

    in an accommodation letter)—that will set forth what accessible

    course materials, equipment, and other accommodations Miami

    will provide to the student.

e. At the time a student identified pursuant to Paragraph 28(b) or (c), *supra*, registers

   with Miami's Student Disability Services, Miami shall advise the student in

   writing that he or she should notify Miami's Student Disability Services promptly

14

if the student registers late for a course or transfers into a course after the course

has begun. No later than two (2) weeks after receiving such notification, Miami's

Student Disability Services will consult with the student and each instructor in the

courses for which the student registered or transferred late. The requirements of

Paragraph 28(d)(1) through (d)(6), *supra*, will apply to each such consultation.

f.  Miami will provide timely access to converted curricular material. If

circumstances such as late registration, mid-semester transfers, the medium

chosen, or the volume and complexity of the material will delay conversion,

Miami will work with the impacted students to ensure equally effective alternate

access to course materials in the interim.

g.  Once a month during each semester, Student Disability Services will

communicate with each student subject to Paragraph 28(b) or (c), *supra*, to

determine whether the student is receiving the necessary and requested

accommodation. If the student responds that he or she has not received the

necessary and requested accommodation, then Student Disability Services shall

schedule an in-person meeting with the student—which will take place within

three (3) business days of the student's response—to determine what further steps

are necessary to provide the necessary and requested accommodation.

h.  Twice a semester—first, a quarter of the way through the semester, and then three

quarters of the way through the semester—Student Disability Services will

communicate with each instructor for each course in which a student subject to

Paragraph 28(b) or (c), *supra*, is enrolled to remind the instructor about: (1) each

student's individualized disability accommodation plan, and (2) the instructor's

15

responsibility to provide each student with timely access to converted curricular materials—including for materials that the instructor did not list on the course syllabus but which he or she later chooses to circulate or add to the curriculum after the course has begun.

i. If Miami procures web technology or software pursuant to Paragraph 50(e), *infra*, Miami shall not use the web technology or software in any course section in which a student with a disability enrolls, if the student's disability impairs his or her ability to use the inaccessible web technology or software and Miami cannot implement equally effective alternate access in a timely manner.

29.   Within three (3) months of the entry of this Decree, Miami will submit for the United States' approval procedures for providing students with disabilities with timely access to accessible textbooks and course materials (*e.g.*, digital, hard copy Braille, tactile graphics, captioned multimedia, etc.) in a manner consistent with this Decree.

30.   Within three (3) months of the beginning of the fall 2016 semester, Miami will train its personnel who are responsible for converting, or coordinating the third-party conversion of, textbooks, workbooks, and course materials for students with disabilities about:

a. Methods of making accessible PDFs, word processing documents, and presentations, and methods of remediating inaccessible PDFs, word processing documents, and presentations, including the addition or remediation of headings, alternative text, and accessibility of material provided in links and multimedia;

b. Proofreading and remediating scanned text submitted to optical character recognition;

c. Captioning and audio describing multimedia;

16

    d. Providing images in tactile formats; and

    e. Procedures for converting materials into Braille that would be appropriate and effective for individual students, including the standards set forth in the BANA Guidelines and Standards for Tactile Graphics (2010) and Guidelines for the Production of Braille Materials through the Use of Braille Production Software (2007).

**E.**    **Student Organization Website Accessibility**

31.    Within six (6) months of the entry of this Decree, Miami will:

    a. Cause any websites, web pages, and web applications (*e.g.*, "The Hub," https://muhub.collegiatelink.net/) that it provides for use by student organizations that have registered with Miami to: (1) conform with WCAG 2.0 AA, and (2) not block or interfere with any accessibility features in content uploaded by students and other individuals who may upload content to such websites, web pages, and web applications ("Content Providers").

    b. Cause the content management systems that Miami uses for such websites, web pages, and web applications to employ templates with fields designed to assist Content Providers with producing and uploading WCAG 2.0 AA-conforming content (*e.g.*, fields prompting Content Providers to insert text alternatives ("alt text") for images).

    c. Develop a guide for Content Providers entitled "How to Make Web Content Accessible." This guide will: (1) describe steps for making content that is uploaded to the content management systems referenced in Paragraph 31(b),

17

*supra*, conform with WCAG 2.0 AA, and (2) list resources for producing accessible content.

d.  Post a copy of the guide to each of the content management systems referenced in Paragraph 31(b), *supra*.

e.  Distribute to each Content Provider a copy of the guide, upon the Content Provider's registration with any of the websites, web pages, or web applications that Miami makes available for use by student organizations that have registered with Miami.

**F.  Inaccessible Digital File Conversion Submission Page**

32.  Within three (3) months of the entry of this Decree, Miami will create a WCAG 2.0 AA-conforming web page that contains instructions to permit:

a.  Qualified individuals with disabilities who are students, staff, or applicants for admission to Miami to submit or upload for Miami's remediation inaccessible documents, images, and multimedia that have been: (1) created by Miami and published on its websites; or (2) sent to or received at a Miami email address, or that have been posted to a Miami website (such as the Hub), by Miami students or staff in connection with curricular activities, student government, major student publications (Miami Student, Miami Quarterly, and UP Magazine), student organizations that have registered with Miami, residential life activities (*e.g.*, dorm movie nights) sponsored or organized by Miami's Residence Hall Association, student participation in or attendance at campus theatrical and musical performances, student participation in or attendance at campus art shows,

18

or student participation in or attendance at recreational events and activities (*e.g.*, intramural sports).

b. Qualified individuals with disabilities who are former students of Miami to submit or upload for Miami's remediation inaccessible files (*e.g.*, documents, images, and multimedia) on websites that Miami directs former students to use for completion of critical or important functions (*e.g.*, websites used for obtaining transcripts).

33. Trained, knowledgeable Miami staff will regularly monitor the submissions and uploads, and, exercising due diligence, will promptly remediate and convert into accessible format any such submitted files.

a. Within three (3) business days of an individual's submission or upload, Miami will transmit to the submitting individual a remediated version of the inaccessible file, unless such factors as the complexity or length of the file, the volume of requests, or the need to prioritize academically-related remediation requests necessitates additional time or the individual indicates that the need for conversion into accessible format is not urgent—in which case, Miami will advise the individual of the steps it will take to remediate the file, as well as the time frame it anticipates it will need to complete the remediation.

b. The requirement that Miami remediate inaccessible videos does not extend to: (1) videos posted by students in connection with the Miami Student or with student organizations that have registered with Miami; or (2) links that Miami students circulate—in connection with non-curricular activities—of videos posted to non-Miami websites.

19

34.     With respect to the requirement that Miami remediate, upon request, inaccessible files circulated in connection with student government, major student publications, and registered student organizations (*see* Paragraph 32(a), *supra*), Miami may contact the United States two academic semesters after the entry of this Decree to request modification or removal of this requirement. The United States will modify or remove this requirement upon a showing by Miami that the volume of requests for remediation of such files is unreasonably difficult or costly for Miami.

G.     <u>Accessible Technology Policy</u>

35.     Within three (3) months of the entry of this Decree, Miami will submit for the United States' approval an Accessible Technology Policy consistent with this Decree. The Accessible Technology Policy will provide for equal opportunity for qualified individuals with disabilities to participate in and benefit from Miami's services, programs, and activities. The Accessible Technology Policy will recognize that Miami increasingly uses web-based, digital, and emerging technologies, and will incorporate or refer to procedures for providing qualified individuals with disabilities with timely access to accessible course materials in electronic and hard copy formats (*e.g.*, digital, hard copy Braille, tactile graphics, captioned multimedia, etc.), as provided for in Section D, "Textbook and Course Material Accessibility," *supra*.

36.     Within one (1) month after approval by the United States of the Accessible Technology Policy, Miami will implement it and:

        a. Distribute the Accessible Technology Policy by email to all: (1) instructional employees, instructional contractors, and instructional volunteers, and (2) administrative employees, administrative contractors, and administrative volunteers who are responsible for the procurement or provision of technology;

20

     b. Make the Accessible Technology Policy publicly available, directly linked from an accessibility link on www.miamioh.edu and located on the Accessible Educational Resources Portal required in Section K, "Accessible Educational Resources Portal," *infra*; and

     c. Include the Accessible Technology Policy in the Miami University Policy and Information Manual ("MUPIM"), and any similar publication.

37. For the term of this Consent Decree, Miami will:

     a. Upon hire or retention, provide the Accessible Technology Policy to all: (1) instructional employees, instructional contractors, and instructional volunteers, and (2) administrative employees, administrative contractors, and administrative volunteers who are responsible for the procurement or provision of technology; and

     b. Annually provide the Accessible Technology Policy to all: (1) instructional employees, instructional contractors, and instructional volunteers, and (2) administrative employees, administrative contractors, and administrative volunteers who are responsible for the procurement or provision of technology.

## H. Accessible Technology Coordinator

38. Miami will identify to the United States as soon as possible, but no later than two (2) months after entry of this Decree, an Accessible Technology Coordinator who reports directly to Miami's Vice President for Information Technology.

39. The Accessible Technology Coordinator will, either upon hire or within two (2) months thereafter:

     a. Be knowledgeable concerning:

21

1) The general requirements of Title II of the ADA and its applicable regulation;

2) Accessibility and usability of web content;

3) Accessibility and usability of technology, including equipment and devices used in classrooms and laboratories (*e.g.*, clickers, lab equipment, smart boards);

4) Testing and evaluation of the accessibility of web and other technologies;

5) This Decree;

6) The W3C's WCAG 2.0, ATAG 2.0, UAAG 1.0, WAI-ARIA 1.0, MathML, WCAG2ICT, and any successors to those standards that become effective during the term of this Decree; and

7) DAISY and EPUB 3.

b. Be familiar with:

1) Accessible document development and remediation; and

2) The appropriate provision of auxiliary aids and services for students with disabilities in non-electronic or non-digital formats, such as Braille hard copy, tactile graphics, large print hard copy, sign language interpretation, and reasonable modifications to policies, practices, and procedures, such as procuring technologies outside of general policies and making reasonable security exceptions for assistive technologies.

22

    c. Coordinate Miami's compliance with this Decree with respect to digital and non-digital technology. While Student Disability Services will have primary responsibility for Miami's provision of non-digital technology (*e.g.*, tactile graphics, Braille hard copy) to students with disabilities, the Accessible Technology Coordinator will coordinate with Student Disability Services to oversee Miami's compliance with the Decree's non-digital-technology requirements.

    d. Report and document quarterly to Miami's Vice President for Information Technology and the Office of Equity and Equal Opportunity:

        1) Miami's progress in meeting the Decree's technology-related requirements. Each progress report will identify milestones Miami has achieved to date, the benchmarks in the Decree that Miami has not yet met, and the steps Miami is taking to achieve those benchmarks; and

        2) Whether Miami has received any written complaints or grievances concerning the use of inaccessible technologies.

**I.**     **University Accessibility Committee**

40.     Within two (2) months of the entry of this Decree, Miami will identify to the United States the membership of the University Accessibility Committee, comprised of the Accessible Technology Coordinator (as set forth in Section H, "Accessible Technology Coordinator," *supra*), the Web Accessibility Coordinator (as set forth in Section B, "Web Content Accessibility," *supra*), the Accessible Technology Specialist (as set forth in Section N,

23

"Accessible Technology Specialist, Audit, Evaluation, and Corrective Action Plan," *infra*), and a representative from each of the following departments:

  a. IT Services;

  b. Finance and Business Services;

  c. Provost;

  d. Student Disability Services;

  e. Miami University Libraries;

  f. University Communications and Marketing;

  g. Office of Equity and Equal Opportunity;

  h. Student Affairs;

  i. Intercollegiate Athletics; and

  j. Purchasing and Central Services.

Miami may, at any time, add to the University Accessibility Committee representatives from other departments, provided that Miami reports any such additions in the next reporting required by Part VI, "Reporting, Enforcement, and Other Provisions," *infra*.

  41. The University Accessibility Committee, which will be chaired by the Vice President for Information Technology, will have overall responsibility for implementing the requirements of this Decree and will assist the Accessible Technology Coordinator, the Web Accessibility Coordinator, the Accessible Technology Specialist, and Student Disability Services in implementing this Decree.

  42. The University Accessibility Committee will meet at least quarterly during the term of this Decree to discuss challenges and strategies for addressing accessibility barriers and the implementation of this Decree.

**J.    Accessible Technology Training**

43.    Within six (6) months of the entry of this Decree and annually thereafter for the term of this Decree, Miami will provide mandatory accessible technology training to all:

    a.  Employees responsible for writing or publishing content to Miami's websites;

    b.  An academic technology specialist from each of Miami's colleges, schools, and libraries;

    c.  Employees who provide support for educational technology at Miami (including LMSs, equipment, software, and applications used);

    d.  Employees responsible for procurement of educational or digital technology;

    e.  Employees responsible for converting hard copy materials into electronic and alternate formats, except where a contractor is specifically retained for its expertise in converting materials into accessible formats;

    f.  Professional-level employees in Miami's Student Disability Services;

    g.  Professional-level employees in the Office of Equity and Equal Opportunity; and

    h.  A representative from the human resources department who is responsible for ADA compliance.

44.    The accessible technology training for those individuals identified in Paragraph 43, *supra*, will cover:

    a.  The Accessible Technology Policy;

    b.  The identity and responsibilities of the University Accessibility Committee, the Accessible Technology Coordinator, the Web Accessibility Coordinator, the Accessible Technology Specialist, and personnel in Student Disability Services;

25

    c.   Common assistive technologies and other auxiliary aids and services used by qualified individuals with disabilities in interacting with computers, websites, and equipment, and for use in learning in and outside of the classroom, including non-electronic formats;

    d.   Common technological accessibility barriers faced by qualified individuals with disabilities, including on the web (including LMSs, multimedia, and services), in various document formats (Word, Adobe PDF, PowerPoint, etc.), and equipment and devices used in laboratories and classrooms;

    e.   Common methods, resources, personnel, and lengths of time for ensuring the accessibility of word processing, spreadsheet, and presentation documents (Word, Adobe PDF, PowerPoint, etc.); converted and digital textbooks; multimedia (*e.g.*, videos on the web or videos presented in the classroom); and course equipment and devices (clickers, lab equipment, smart boards, etc.);

    f.   An overview of accepted accessibility standards, including WCAG 2.0, UAAG 1.0, ATAG 2.0, MathML, WAI-ARIA, WCAG2ICT, DAISY, EPUB3, the BANA Guidelines and Standards for Tactile Graphics (2010) and Guidelines for the Production of Braille Materials through the Use of Braille Production Software (2007), and any successors to the aforementioned accessibility standards that may come into effect during the term of this Decree; and

    g.   Consideration of the selection of course texts that have available accessible electronic formats, such as DAISY or EPUB3.

45.    In addition to the training requirements identified in Paragraphs 43-44, *supra*, Miami will provide accessible technology training to all faculty and their administrative

26

assistants. Miami will also provide accessible technology training to all: (a) teaching assistants and student assistants in any course in which at least one student who has registered with Student Disability Services is enrolled; and (b) student assistants whom Miami has hired or retained to accommodate students with disabilities (*e.g.*, note takers, assistants who create tactile graphics). Miami will provide accessible technology training to all such individuals within six (6) months of the entry of this Decree, and thereafter to all new faculty, faculty administrative assistants, and student assistants upon hire or retention, and to all teaching assistants upon hire or retention for any course in which at least one student who has registered with Student Disability Services is enrolled. The accessible technology training will cover:

    a. An overview of the Accessible Technology Policy;

    b. The process for requesting and receiving accommodations;

    c. Resources, available support, and general lengths of time to deliver accessible converted materials;

    d. Procedures on reporting to Miami's Student Disability Services if a student reports to faculty or teaching assistants the existence of inaccessible course materials or technologies; and

    e. Practical guidance on creating accessible documents and content.

46. On an annual basis following the training identified in Paragraph 45, *supra*, Miami will provide instructional staff with written information covering Paragraphs 45(a)-(e), *supra*.

47. For the term of this Decree, Miami will offer during orientation for incoming students a presentation by Miami's Student Disability Services that will include:

    a.  An overview of the Accessible Technology Policy, the Accessible Educational Resources Portal identified in Section K, "Accessible Educational Resources Portal," *infra*, and Miami's Student Disability Services;

    b.  Miami's textbook and course material conversion services, as described in Section D, "Textbook and Course Material Accessibility," *supra*; and

    c.  Where to direct questions and concerns, including a discussion of Miami's Grievance Policies.

**K.**    **Accessible Educational Resources Portal**

48.    Within six (6) months of the entry of this Decree, Miami will: (a) create web pages (Accessible Educational Resources Portal) linked to its home page that conform to WCAG 2.0 AA and that identify resources for Miami employees and contractors to communicate effectively with students with disabilities through various technologies, and (b) provide notice to students with disabilities about the policies, procedures, and resources identified on the Accessible Educational Resources Portal. Miami will also send an email to all Miami employees, contractors, and students that describes and provides a hyperlink to the Accessible Educational Resources Portal.

49.    Miami will make the Accessible Educational Resources Portal available to the public and will post to it:

    a.  The Accessible Technology Policy;

    b.  The names and contact information for the Accessible Technology Coordinator, Web Accessibility Coordinator, and appropriate staff contacts in Student Disability Services;

28

    c.   Links to resources to assist in preparing accessible PDFs, presentations, and other documents;

    d.   A link to the Inaccessible Digital File Conversion Submission Page discussed in Section F, *supra*;

    e.   A link to a form for submitting a grievance or informal complaint, with a further option to submit issues or complaints anonymously, on any accessibility barriers relating to technology offered or used by Miami, which will be reviewed by Student Disability Services within one (1) business day of submission for appropriate action within five (5) business days of submission;

    f.   A link to information detailing Miami's Disability Grievance Process, described in Section O, *infra*; and

    g.   The Accessibility Audit Corrective Action Plan, once Miami adopts the Plan pursuant to Section N, "Accessible Technology Specialist, Audit, Evaluation, and Corrective Action Plan," *infra*.

**L.**    **Technology Procurement**

50.    Within three (3) months of the entry of this Decree and for its term, Miami will take the following steps in its procurement process for any software or web technology, including LMSs and standalone instructional support applications, that Miami procures for use by students:

    a.   Web technology or software that Miami procures for use by its students will conform to the relevant standards of Paragraph 50(d)(1), *infra*, if the technology is commercially available and its purchase does not result in undue financial and administrative burdens or a fundamental alteration.

29

b. If a product is available and meets some, but not all, of the relevant standards of Paragraph 50(d)(1), *infra*, Miami must procure the product that best meets the standard, unless its purchase would result in undue financial and administrative burdens or a fundamental alteration, or unless an exception applies pursuant to Miami's technology procurement policy (*see* Paragraph 50(e), *infra*). In determining which product best meets the relevant accessibility standards, Miami may take into account a contractual commitment from the vendor to make any non-conforming web technology or software conform or best conform to such standards before Miami makes the product available for use by students. After the vendor represents that it has updated the product to conform or best conform to the relevant accessibility standards, Miami shall independently test the product through automated, expert, and user testing, and verify that the product meets the vendor's representations. Miami shall not use the product until the vendor satisfies its commitment to make the product conform or best conform to the relevant accessibility standards.

c. Miami will request, obtain, review, and evaluate each vendor's most recent accessibility testing results, if available, for such products purchased through Miami's Office of Purchasing.

d. Any Request for Proposal ("RFP") by Miami will include the following requirements:

1) The vendor must specify whether web content and software conform to the following standards (or, if applicable, the

30

successors to those standards, should any become effective during the term of this Decree):

    i.    The W3C's WCAG 2.0 AA and WAI-ARIA 1.0 for RFPs seeking web content;

    ii.    The W3C's ATAG 2.0 for RFPs seeking web authoring tools;

    iii.    The W3C's UAAG 1.0 for RFPs seeking web browsers, media players, and assistive technologies;

    iv.    The W3C's WCAG2ICT or Section 508-1194.21, 36 C.F.R. § 1194.21, for RFPs seeking non-web software and content;

    v.    The W3C's MathML 3.0 specification for RFPs seeking products incorporating digital mathematical and scientific notation;

    vi.    The DAISY Standard or the IDPF's EPUB 3 specification for RFPs seeking digital publications and documents; and

    vii.    The BANA Guidelines and Standards for Tactile Graphics (2010) and Guidelines for the Production of Braille Materials through the Use of Braille Production Software (2007) for hard copy Braille.

2)    The vendor must either:

    i. Agree to make non-conforming web content and software conform to relevant standards identified in Paragraph 50(d)(1), *supra*; or

    ii. Detail how the vendor will support Miami in providing equally effective alternate access for non-conforming web content and software.

  e. Within one (1) month of the entry of this Decree, Miami will develop for approval by the United States a technology procurement policy to address technology procurement situations that may warrant expedited consideration for an exception to the requirements of Paragraphs 50(a) or (b), *supra*. This policy will include a description of categories of technology procurement situations that may warrant expedited consideration and the required content of requests for expedited consideration.

**M.** **Web Accessibility Testing**

51. Within five (5) months of the entry of this Decree, Miami will obtain, subject to the United States' approval, an automated accessibility testing tool to evaluate conformance of its web pages and web applications with this Decree.

52. Once Miami obtains the tool, and at least once every three (3) months thereafter for the term of this Decree, Miami will conduct automated accessibility tests of its websites and third-party websites that it uses for completion of critical transactions or required trainings (*see* Paragraph 21(d), *supra*) to identify where web pages and web applications fail to conform with this Decree.

32

53.    Within one (1) month of conducting each automated accessibility test, Miami will bring into conformance with this Decree any non-conformance identified pursuant to Paragraph 52, *supra*.  If, after conducting any such test, Miami concludes that it cannot achieve conformance within this time frame, it will proceed pursuant to Paragraph 71, *infra*.

**N.    Accessible Technology Specialist, Audit, Evaluation, and Corrective Action Plan**

54.    Within two (2) months of the entry of this Decree, Miami will retain or hire an Accessible Technology Specialist, and report to the United States the identity and qualifications of such individual.  The Accessible Technology Specialist shall have expertise concerning:

     a.   Accessibility and usability of web content;

     b.   Accessible document development and remediation;

     c.   Accessibility and usability of equipment;

     d.   Testing and evaluation of the accessibility of web and other technologies;

     e.   This Decree;

     f.   How to address accessible technology barriers in the education setting; and

     g.   WCAG 2.0.

55.    Within twelve (12) months of the entry of this Decree, the Accessible Technology Specialist will conduct a University-wide Accessibility Audit of digital technologies (*e.g.*, software, web technologies such as LMSs and instructional support applications) that Miami uses for education, web development, admissions, financial aid, registration, or any other critical function related to students or applicants.  The technologies subject to the Accessibility Audit include, *inter alia*, third-party content, websites, or applications that Miami uses to complete critical or important transactions (*see* Paragraph 21(d), *supra*), but exclude Miami's Niikha and Canvas LMSs, both of which are addressed in Section C, "Learning Management System and

33

Instructional Support Application Accessibility." The Accessibility Audit will examine the accessibility and usability of digital technologies for students and applicants who have disabilities.

56.      Within fourteen (14) months of the entry of this Decree, the Accessible Technology Specialist will provide written findings to the United States on the University-wide Accessibility Audit and recommendations for accessibility improvements. Miami will make these findings available in an accessible format to staff and faculty, and to a student upon request.

57.      Within sixteen (16) months of the entry of this Decree, Miami will:

    a.  Create an Accessibility Audit Corrective Action Plan that will address, in order of priority, the following findings of the University-wide Accessibility Audit: (1) accessibility issues relating to LMSs and instructional support applications; (2) digital technologies affecting the needs of enrolled students with disabilities in courses required for their majors, minors, and for graduation; (3) other digital accessibility barriers that students with disabilities have brought to Miami's attention during the Audit period; and (4) other findings of the Audit that Miami deems a priority;

    b.  Provide the United States with a copy of the Accessibility Audit Corrective Action Plan and make the Plan available in an accessible format to staff and faculty, and to a student upon request; and

    c.  Include in the Plan a schedule by which Miami will address the Audit's findings, dates for resolving accessibility barriers department by department, and an accessible means by which students can provide feedback.

The Accessibility Audit Corrective Action Plan will be revised annually to address technologies affecting the needs of newly enrolled students with disabilities and students with disabilities who have changed majors or minors, as well as technologies in courses that students must take to meet their graduation requirements. The adoption and implementation of the Accessibility Audit Corrective Action Plan will not be construed as or deemed an admission of a violation of this Decree or Title II.

58.     By the conclusion of the 2018-2019 academic year, Miami will remedy the findings of the University-wide Accessibility Audit in accordance with the Accessibility Audit Corrective Action Plan.

59.     The Accessible Technology Specialist will be available for the term of this Decree to assist Miami in testing technologies for accessibility and in complying with this Decree.

**O.     Grievance Process**

60.     Within one (1) month of the entry of this Decree, Miami will amend its "Accommodations Request Form" to include a statement that students who believe they have been denied appropriate disability-related accommodations, including appropriate auxiliary aids and services, may file a grievance with Miami's Student Disability Services or with Miami's Office of Equity and Equal Opportunity. The Accommodations Request Form will include the student's contact information and describe Miami's existing escalating appeals process when a student's grievance is not resolved to the student's satisfaction.

61.     Within one (1) month of the entry of this Decree, Miami will establish a process by which any grievance to which Student Disability Services has not responded within the time frame set forth in Paragraph 49(e), *supra*, will automatically be escalated for timely resolution by the Office of Equity and Equal Opportunity.

## P. Evaluation of Student Disability Services

62. Within six (6) months of the entry of this Decree, Miami will evaluate its Student Disability Services to determine whether it is adequately staffed and uses effective and appropriate practices (including its accommodations process); report to the United States its evaluation pursuant to Part VI, "Reporting, Enforcement, and Other Provisions," *infra*; develop a plan to remedy any inadequacies; and remedy any inadequacies. Within six (6) months of the entry of this Decree, Miami will also develop best practices for Student Disability Services to select and train note takers and appropriate lab assistants, and effectively facilitate the cooperation of faculty in producing accessible curricular materials. If, in the process of implementing the requirements of Paragraph 62, Miami concludes that it cannot complete one or more of these requirements within the time frame set forth herein, Miami will contact the United States to proceed pursuant to Paragraph 71, *infra*.

## Q. Undue Burden and Fundamental Alteration Determinations

63. For any technology-related requirement in this Decree for which the University asserts undue burden or fundamental alteration, such assertion may only be made by: (a) the President of Miami or (b) an individual designated by the President and who has budgetary authority after considering all resources available for use in the funding and operation of the service, program, or activity. Any such assertion of undue burden or fundamental alteration must be accompanied by a written statement of the reasons for reaching that conclusion, including Miami's available funding and other resources, and the cost of meeting the requirement, where relevant. The written statement will be certified by the determining official (President or designated official with budgetary authority). If such a determination is made, Miami will take, and will specify in the written statement, any other action that would not result in such an

36

alteration or such burdens but would nevertheless ensure, to the maximum extent possible, that

qualified individuals with disabilities receive the benefits or services provided by Miami.

**R.** **Personal Devices and Services**

64. Pursuant to Title II and its implementing regulation, Miami is not required to

provide qualified individuals with disabilities with personal devices, such as wheelchairs;

individually prescribed devices, such as prescription eyeglasses or hearing aids; or services of a

personal nature, such as assistance in eating, toileting, or dressing.

## V. SPECIFIC RELIEF

65. The United States has provided Miami with the names of specific individuals to

whom Miami agrees it will provide monetary payment totaling $25,000. Within ten (10) days of

Miami's receipt of a completed release (in the form of Exhibit B) from any of these individuals,

Miami will pay and deliver to such individual a check in an amount directed by the United

States. The combined total of all payments remitted to such individuals will not exceed $25,000.

## VI. REPORTING, ENFORCEMENT, AND OTHER PROVISIONS

66. Within six (6) months of the entry of this Decree, and annually after the entry and

for the term of this Decree, Miami will submit a report to the United States detailing Miami's

compliance with this Decree, including the requirements identified in Part IV, "Terms of

Agreement," of this Decree. Each report will include copies of any new quarterly reports made

by the Accessible Technology Coordinator pursuant to Section H, *supra*. Each report will

identify separately, provide contact information for, include the substance of, and detail Miami's

resolution of, any grievance it receives during the reporting period pursuant to its established

grievance procedures for technology-related accessibility issues for students and applicants with

disabilities. Any course-related written grievance, whether submitted by a student or documented

37

by the student's agent or Miami personnel, will include the name of the course, the names of the

instructors, and a detailed description of the status or resolution of the matter. Each report will

identify and provide, if applicable, the written statements supporting any determination of undue

burden or fundamental alteration, and how Miami provided equally effective alternate access.

67.     If the United States believes that this Consent Decree or any portion of it has been

violated, the United States will give notice (including reasonable particulars) of the violations to

Miami. Miami must respond to this notice as soon as practicable but no later than thirty (30)

days thereafter. The United States and Miami will negotiate in good faith in an attempt to

resolve any dispute.   If the United States and Miami are unable to reach a mutually acceptable

resolution within sixty (60) days of Miami's response, the United States may seek court

enforcement of this Decree.

68.     This Consent Decree is effective as of its entry and will remain in effect for four

(4) years.

69.     Dudley and Miami agree that Dudley's efforts in the pursuit of her education have

brought to the forefront issues relating to accessibility of technology and other programs for

individuals with disabilities, and have served integral roles in the development of this Decree and

to Miami's efforts to pursue the implementation of software and programs to provide better

accessibility for individuals with disabilities, as well as the hiring of additional qualified

individuals to oversee the implementation of policies and procedures regarding the accessibility

of technology and other aspects of the services Miami provides to its students. Miami and

Dudley have entered into an additional agreement, subject to the continuing jurisdiction of the

Court until fulfilled, and to which the United States is not a party, that governs the payment of

money to Ms. Dudley, other relief applicable to Dudley, and the release of Dudley's claims against Miami and Dr. Hodge.

70.     Except as addressed in additional terms of the agreement between Miami and Dudley pursuant to Paragraph 69, *supra*, this Consent Decree contains the entire agreement of the Parties concerning the subject matter described in the Complaints filed in this action and in Part I, "Introduction," *supra*, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree will be enforceable.

71.     Any modification of this Consent Decree requires the written consent of the United States and the approval of the Court; provided that, the United States and Miami may agree in writing to extend the applicable deadlines specified in this Consent Decree, other than its termination.   The United States will not unreasonably deny requested extensions, if made by Miami in advance of any deadline, and following Miami's due diligence to meet such a requirement.

72.     This Consent Decree will be binding on Miami and its respective subsidiaries, agents, employees, officers, contractors, and successors.

73.     Failure by the United States to enforce this Decree, or any part of it, pursuant to its terms with respect to any instance or provision, will not be construed as a waiver to enforce the Decree with regard to any instances or provisions.

74.     The Parties agree that, as of the entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in the Complaints filed in this action. To the extent that any of these Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the

39

Complaints, the party is no longer required to maintain this litigation hold. Nothing in Paragraph 74 relieves any party of any other obligations imposed by this Consent Decree.

75.     All materials to be submitted to the United States will be sent to Rebecca B. Bond, Chief, Disability Rights Section, Civil Rights Division, U.S. Department of Justice, 1425 New York Avenue, N.W., Fourth Floor, Washington, DC 20005, along with a reference to DJ 204-58-229, by common carrier other than the U.S. Postal Service. Copies of such materials will also be e-mailed to undersigned counsel for the United States.

76.     All notices pursuant to Paragraph 67, *supra*, must be in writing and will be sent to the Office of General Counsel, Miami University, 215 Roudebush Hall, 501 E. High Street, Oxford, Ohio 45056, by certified U.S. Mail, return receipt requested.

77.     If, during the term of this Decree, the United States Congress amends the Title II statute, the Department amends the Title II regulation, or the United States Supreme Court issues a decision concerning the application of Title II as it relates to the subject matter of this Decree, the United States and Miami shall meet and confer at the request of either party to discuss whether any modification to the terms of this Decree is warranted to achieve consistency with the amended Title II statute or regulation, or with the United States Supreme Court's application of Title II to website accessibility.

78.     The Parties agree that nothing contained in this Decree shall be deemed at any time for any purpose as an admission by Miami of any liability or unlawful conduct of any kind.

79. The signatories represent that they have the authority to bind the respective Parties identified below to the terms of this Decree.

80. This Decree may be executed in any number of counterparts, each of which is an original, and all of which taken together constitute one single document.

**SO ORDERED** this 14th day of December, 2016.

Honorable Susan J. Dlott
United States District Judge
United States District Court
Southern District of Ohio

41

AGREED AND CONSENTED TO:

FOR THE UNITED STATES:

BENJAMIN C. GLASSMAN
United States Attorney

VANITA GUPTA
Principal Deputy Assistant Attorney General
EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
KATHLEEN P. WOLFE
Special Litigation Counsel
KEVIN J. KIJEWSKI
Deputy Chief
Disability Rights Section

MARK T. D'ALESSANDRO
MATTHEW J. HORWITZ
United States Attorney's Office
Southern District of Ohio
303 Marconi Blvd., Suite 200
Columbus, OH 43215
(614) 469-5715
Mark.Dalessandro@usdoj.gov
Matthew.Horwitz@usdoj.gov

PEARLINE M. HONG
NABINA SINHA
Trial Attorneys
Disability Rights Section (NYA)
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Telephone: (202) 616-2927 (Hong)
(202) 616-2730 (Sinha)
Fax: (202) 514-7821
Pearline.Hong@usdoj.gov
Nabina.Sinha@usdoj.gov

Dated: ___10/11/16___

Dated: ___10/7/16___

42

**FOR ALEEHA DUDLEY:**

DANIEL F. GOLDSTEIN
dfg@browngold.com
SHARON KREVOR-WEISBAUM
skw@browngold.com
EMILY L. LEVENSON
elevenson@browngold.com
BRETT WATSON
bwatson@browngold.com
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Ste. 1700
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869

Dated: _October 7, 2016_

KERSTIN SJOBERG-WITT (0076405)
Trial Attorney for Plaintiff
ksjoberg-witt@disabilityrightsohio.org
LAURA OSSECK (0082231)
losseck@disabilityrightsohio.org
Ohio Disability Rights Law and Policy
Center, Inc.
DISABILITY RIGHTS OHIO
50 W. Broad Street, Suite 1400
Columbus, Ohio 43215-5923
(614) 466-7264 Tel.
(614) 644-1888 Fax.

Dated: _October 10, 2016_

RUTH COLKER (0084737)
rcolker@me.com
Moritz College of Law
The Ohio State University
55 West 12th Avenue
Columbus, OH 43210
Phone: 614-457-7488

Dated: _October 10, 2016_

43

**FOR THE DEFENDANTS:**

MICHAEL DEWINE
ATTORNEY GENERAL OF OHIO

_____
DR. DAVID K. CREAMER
Vice President for Finance and Business
Services
Miami University

By Its Special Counsel:

Elizabeth T. Smith (0012075)
Trial Attorney for Defendants
etsmith@vorys.com
Daniel J. Buckley (0003772)
djbuckley@vorys.com
Erin D. French (0090813)
edfrench@vorys.com
Vorys Sater Seymour & Pease LLP
301 East 4th Street, Suite 3500
Cincinnati, OH 45202
(513) 723-4002 Tel.
(513) 852-7819 Fax.

Dated: _____

Dated: 10 / 13 /2016

44

**FOR THE DEFENDANTS:**

DR. DAVID K. CREAMER
Vice President for Finance and Business
Services
Miami University

Dated: _10 – 13 – 16_

MICHAEL DEWINE
ATTORNEY GENERAL OF OHIO

By Its Special Counsel:

_____
Elizabeth T. Smith (0012075)
Trial Attorney for Defendants
etsmith@vorys.com
Daniel J. Buckley (0003772)
djbuckley@vorys.com
Erin D. French (0090813)
edfrench@vorys.com
Vorys Sater Seymour & Pease LLP
301 East 4th Street, Suite 3500
Cincinnati, OH 45202
(513) 723-4002 Tel.
(513) 852-7819 Fax.

Dated: _____

44

**EXHIBIT A**

**Miami University Academic Divisions, Academic Departments, and Administrative Offices**

1.    Academic Advising and University Studies

2.    Academic Affairs

3.    Academic Calendar

4.    Academic Personnel

5.    Accountancy, Department of

6.    Admission, Office of

7.    Agile Launch Pad

8.    Airport/Aviation Services

9.    Alumni

10.   American Culture and English Program

11.   American Studies Program

12.   Amos Music Library

13.   Animal Behavior, Center for

14.   Annual Security and Fire Safety Report

15.   Anthropology, Department of

16.   Arabic (GRAMELAC)

17.   Aquatic and Watershed Sciences, Center for

18.   Architecture and Interior Design, Department of

19.   Armstrong Student Center

20.   Art Center

21.   Art Museum

22.   Art, Department of

23.   Arts and Culture

45

24.     Asian/Asian American Studies

25.     Associated Student Government

26.     Augmented Reality Center

27.     BannerWeb

28.     Bernard B. Rinella Jr. Learning Center

29.     Bioinformatics and Functional Genomics, Center for

30.     Biology, Department of

31.     Black World Studies Program

32.     Bookstore

33.     Botany, Department of

34.     Box Office (third-party website/vendor components)

35.     Brand Ambassadors of Miami

36.     Budget Office

37.     Bulletin – General (third-party website/vendor components)

38.     Bursar, Office of the

39.     Campus Safety and Security

40.     Career Services

41.     Cell, Molecular, and Structural Biology Graduate Program

42.     Center for Advanced Microscopy and Imaging

43.     Center for American and World Cultures

44.     Center for Chemistry Education

45.     Center for Community Engagement in Over the Rhine

46.     Center for Environmental Education

47.     Center for Teaching Excellence

48.     Chemical, Paper and Biomedical Engineering, Department of

46

49. Chemistry and Biochemistry, Department of

50. Chinese (GRAMELAC)

51. Choose Miami

52. Classics, Department of

53. Cliff Alexander Office of Fraternity and Sorority Life

54. College of Arts and Science

55. College of Creative Arts

56. College of Education, Health and Society

57. College of Engineering & Computing

58. Come Play with Us

59. Commencement

60. Community Engagement and Service, Office of

61. Comparative Religion, Department of

62. Computer Science and Software Engineering, Department of

63. Conference and Event Services

64. Confucius Institute

65. Consumer Information for Families and Employees

66. Continuing Education

67. Controller, Office of the

68. CraftSummer and CraftWinter

69. Dean of Students - Division of Student Affairs

70. Development

71. Dining, Student

72. Discovery Center, The

73. Diversity Affairs, Office of

47

74. Division of Finance and Business Services

75. Division of Housing, Dining, Recreation, and Business Services

76. Division of IT Services

77. Division of Student Affairs

78. Drug Free Policy

79. Ecology Research Center

80. Ecology, Evolution and Environmental Biology Ph.D. Program

81. Ecology, Graduate Program

82. Economics, Department of

83. Educational Leadership, Department of

84. Educational Psychology, Department of

85. e-Learning (Oxford)

86. eLearning Management Systems

87. Electrical and Computer Engineering, Department of

88. Emergency Procedures

89. Employee Benefits and Wellness

90. English, Department of

91. Enrollment Communications, Office of

92. Enrollment Management for Student Success Services

93. Entrepreneurship Program

94. Environment and Sustainability, Institute for

95. Environmental Safety and Risk Management

96. Ethics and Student Conflict Resolution, Office of

97. Faculty Profiles/Research (third-party website/vendor components)

98. Family Studies and Social Work, Department of

48

99.     Farmer School of Business

100.    Finance and Business Services, Offices of

101.    Finance, Department of

102.    French and Italian, Department of

103.    Gay, Lesbian, Bisexual, and Transgender Student Services (GLBTQ)

104.    General Counsel, Office of

105.    Geography, Department of

106.    Geology and Environmental Earth Science, Department of

107.    Geospatial Analysis Center

108.    German (GRAMELAC)

109.    German, Russian and Middle Eastern Languages and Cultures (GRAMELAC)

110.    Global Health Studies

111.    Global Initiatives

112.    Goggin Ice Center

113.    Graduate School

114.    H.O.M.E. (Student Housing)

115.    Havighurst Center for Russian and Post-Soviet Studies

116.    Healthy Miami Portal (third-party website/vendor components)

117.    Hebrew (GRAMELAC)

118.    Hefner Museum of Natural Science

119.    Hiestand Art Galleries

120.    Hindi (GRAMELAC)

121.    History, Department of

122.    Housing, Dining, Recreation, and Business Services

123.    Howe Center for Writing Excellence

49

124. Human Resources

125. Humanities Center

126. I Am Miami

127. Information Systems and Analytics, Department of

128. IT Services

129. Institutional Diversity

130. Institutional Research, Office of

131. Integrated Science, Institute for

132. Interactive Language Resource Center

133. Interactive Media Studies, Department of

134. Intercollegiate Athletics

135. Internal Audit and Consulting Services

136. International Students and Scholar Services

137. International Studies Program

138. IT @ Miami (third-party website/vendor components)

139. Japanese (GRAMELAC)

140. Jewish Studies Program

141. John E. Dolibois European Center in Luxembourg

142. Karl E. Limper Geology Museum

143. Kinesiology and Health, Department of

144. Korean (GRAMELAC)

145. Latin American Latino/a and Caribbean Studies Program

146. Lecture Series

147. Liberal Education, Office of

148. Lockheed Martin Leadership Institute

50

149.    Love and Horror

150.    Luxembourg

151.    Mail Services Center (and Post Office)

152.    Mallory-Wilson Center for Healthcare Education

153.    Management, Department of

154.    Marketing, Department of

155.    Mathematics, Department of

156.    McGuffey Museum

157.    Mechanical and Manufacturing Engineering, Department of

158.    Media, Journalism and Film, Department of

159.    Miami Catering

160.    Miami Digital Assets (third-party website/vendor components)

161.    Miami Ideas

162.    Miami Print Center

163.    Miami Tribe Relations

164.    Miami University Regionals

165.    Microbiology, Department of

166.    Music, Department of

167.    Myaamia Center

168.    myMiami (third-party website/vendor components)

169.    Natural Areas

170.    Neuroscience and Behavior, Center for

171.    New Student Programs, Office of

172.    News and Communications, University

173.    Nixon Aquatic Center

51

174. No-Hate Initiative

175. Office of Equity and Equal Opportunity

176. Off-Campus Outreach and Communication, Office of

177. Office for the Advancement of Research and Scholarship

178. One Stop for Student Success Services

179. Outdoor Pursuit Center

180. Oxford and Beyond

181. Paper Science and Engineering Foundation

182. Parent and Family Programs, Office of

183. Parking and Transportation Services

184. Payroll Services

185. Performing Arts Series

186. Philosophy, Department of

187. Photography and Videography Services, University

188. Physical Facilities Department

189. Physics, Department of

190. Police, MUPD

191. Policy Library, MU

192. Political Science, Department of

193. Pre-Law Program

194. President, Office of the

195. Provost, Office of the

196. Psychology, Department of

197. Public Ivy

198. Public Management and Regional Affairs, Center for

52

199. Recreational Sports Center

200. Regional Campuses

201. Regionals Career Services and Professional Development

202. Regionals eLearning

203. Regionals: Business Technology

204. Regionals: Civic Engagement, Center for

205. Regionals: College of Professional Studies & Applied Sciences

206. Regionals: Computer and Information Technology

207. Regionals: Engineering Technology

208. Regionals: Integrative Studies

209. Regionals: Justice and Community Studies

210. Regionals: Nursing

211. Research for Undergraduates

212. Residence Life, Office of

213. ROTC Programs

214. ROTC, Air Force Detachment 640

215. ROTC, Naval

216. Russian (GRAMELAC)

217. Scholastic Enhancement Program

218. Scripps Foundation and Gerontology Center

219. Sexual Assault Prevention and Education

220. Sociology and Gerontology, Department of

221. Software Store

222. Spanish and Portuguese, Department of

223. Speech and Hearing Clinic

53

224.    Speech Pathology and Audiology, Department of

225.    Statistics, Department of

226.    Student Activities, Office of

227.    Student Counseling Service, Office of

228.    Student Disability Services Portal (SAM)

229.    Student Disability Services, Office of

230.    Student Financial Assistance, Office of

231.    Student Health Insurance Portal (third-party website/vendor components)

232.    Student Health Service, Office of

233.    Student Life

234.    Student Success, Office of the

235.    Student Teaching and Field Experience

236.    Student Wellness, Office of

237.    Study Abroad and Away

238.    Summer Scholars Program

239.    Teacher Education, Department of

240.    The HUB (third-party website/vendor components)

241.    The Marcum (University hotel and conference center)

242.    Theatre, Department of

243.    Treasury Services

244.    University Advancement

245.    University Communications and Marketing

246.    University Honors Program

247.    University Libraries (third-party website/vendor components)

248.    University Registrar, Office of the

249.    Varsity Athletics (third-party website/vendor components)

250.    Wertz Art and Architecture Library

251.    Western Program

252.    Wilks Leadership Institute, Harry T.

253.    Willard Sherman Turrell Herbarium

254.    Winter Term

255.    Women's Center

256.    Women's, Gender, and Sexuality Studies Program

## EXHIBIT B

## RELEASE

For and in consideration of the relief offered by Miami University pursuant to the Consent Decree entered in *Dudley, et al. v. Miami University, et al.*, Civil Action No. 1:14-cv-38 (S.D. Ohio), and arising out of United States Department of Justice Investigation No. 204-58-229:

I, [*Name*], release Miami University, and its current, former, and future agents, employees, officials, and designees, of and from all legal and equitable claims under Title II of the Americans with Disabilities Act arising from the past provision of inaccessible technologies and failure to provide appropriate auxiliary aids and services necessary for effective communication of curricular and co-curricular content.  I also understand that by signing this release I do not waive any claims under Title II of the Americans with Disabilities Act or any other law that arise after the effective date of this release and which otherwise could not have been brought at or before the effective date of this release.  I acknowledge that a copy of the Consent Decree resolving the matter between the Parties has been made available to me.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF AND I EXECUTE THIS RELEASE FREELY.

Signed this _____ day of _____, 2016

_____
[Claimant's name]